# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JERAD JACKSON,                        )
                                      )
    Plaintiff,                    )
                                      )
v.                                    )    Case No. CIV-25-841-D
                                      )
DAREN SLATER, and SAMANTHIA           )
MARSHALL,                             )
                                      )
    Defendants.                   )
                                      )

## ORDER

Before the Court is Daren Slater's Motion to Dismiss with Brief in Support [Doc. No. 6], to which Plaintiff filed a response [Doc. No. 7]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff brought this action against Defendants Daren Slater and Samanthia Marshall on July 29, 2025 [Doc. No. 1]. Plaintiff asserts claims against Defendants under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, the Stored Communications Act, the Computer Fraud and Abuse Act, and the Wiretap Act. Additionally, Plaintiff asserts state law claims of defamation per se, intentional infliction of emotional distress, and false light against Defendants. Plaintiff also asserts a claim of attorney misconduct and malpractice against Defendant Marshall.

In the instant motion, Defendant Slater moves to dismiss all claims asserted against him. Defendant Slater asserts that he is entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims. Alternatively, Defendant Slater argues that Plaintiff

1

has failed to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), as to his federal claims brought under Section 1983, the Stored Communications Act, the Computer Fraud and Abuse Act, and the Wiretap Act. Finally, Defendant Slater argues that because the Court should dismiss Plaintiff's federal claims, it should decline to exercise supplemental subject matter jurisdiction over the state law claims.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff was employed by Northwest Technology Center (NWTC) until he was placed on administrative leave by Assistant Superintendent Colt Shaw on September 10, 2024, and allegedly terminated on September 16, 2024 [Doc. No. 1, ¶¶ 8-9]. Before he left, Plaintiff informed Mr. Shaw and another instructor, Bobby Watson, that his work-issued laptop contained personal accounts and indicated that he did not consent to these accounts being searched or accessed by anyone—he alleges that he specifically referenced his Google Chrome account. *Id.* ¶ 9. Plaintiff contends that Mr. Shaw and Mr. Watson told him that no one would be in his office during his absence. *Id.*

On September 13, 2024, Plaintiff was told to return to work the following Monday, but upon returning he was confronted with the allegation that pornography was found on his work-issued computer pursuant to a search conducted the day before. *Id.* ¶¶ 11-12, 15. Plaintiff was told that Defendant Slater and Defendant Marshall authorized the search of his computer due to an allegation of stalking; the search was carried out by Mr. Shaw and IT Director Greg Graham. *Id.* ¶¶ 15, 25. Upon learning of the stalking allegation, Plaintiff contends that he spoke with Detective Rackley, a member of the Fairview Police

Department, who explained that Plaintiff was accused of exhibiting suspicious behavior by walking down streets in his town. *Id.* ¶ 27.

Plaintiff claims that the search of his computer was pretextual and overly broad—specifically, he alleges that Mr. Graham admitted under oath that he conducted a blanket search of his computer. *Id.* ¶¶ 15-16. Despite Mr. Graham's assertion that he did not search anything personal on the computer, Plaintiff contends that Mr. Graham and Mr. Shaw searched his personal files and online accounts. *Id.* ¶ 16. Further, he alleges that Mr. Graham testified he had to change the password on Plaintiff's accounts to gain access. *Id.* ¶ 17. Plaintiff's main complaint with the search of his computer stems from the search of his Google Chrome account; Mr. Graham testified that he tried to only search for material Plaintiff accessed during work hours, but the account was configured to sync in real-time across multiple personal devices. *Id.* ¶ 20. The pornographic images at issue here were allegedly found in a folder labeled "phone dump." *Id.* ¶ 21. Plaintiff asserts that Defendant Slater admitted under oath that the decision to terminate him was made after this search. *Id.* ¶ 13.

A hearing was conducted on the matter by the NWTC Board. *Id.* ¶ 22. When Plaintiff asked Mr. Shaw about whether administrators contacted the school's attorney before searching the phone dump folder, a male stood up and invoked attorney-client privilege. *Id.* During Mr. Graham's questioning, he acknowledged that it was possible that the files at issue were accidentally transferred. *Id.* ¶ 23. Plaintiff alleges that Defendant Marshall began reading the titles of YouTube videos from Plaintiff's streaming history at the hearing in an attempt to prejudice the NWTC Board against him. *Id.* ¶ 24.

Plaintiff claims that his hearing was deficient because he "was compelled to respond to vague and anonymous allegations without adequate notice of specific charges, who made them, without the opportunity to confront or cross-examine accusers, without a neutral decision-maker given Defendant Slater's longstanding professional relationships with board members, and without a meaningful opportunity to present a proper defense." *Id.* ¶ 34. Plaintiff further contends that the allegations made against him have caused damage to his reputation. *Id.* ¶¶ 35-38.

**STANDARD OF DECISION**

## I.      Qualified Immunity Standard

"When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024) (citations omitted). "To overcome this presumption, [the defendant] must show that (1) [his] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that 'every reasonable official would have understood,' that such conduct constituted a violation of that right." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

"The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "As the qualified immunity

4

defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "For purposes of qualified immunity, law is clearly established if Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, would put reasonable [individuals] in the defendants' position on notice they were violating the Fourth Amendment." *Soza v. Demsich*, 13 F.4th 1094, 1109 (10th Cir. 2021) (quoting *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017)). A court does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). "The dispositive question is 'whether the violative nature of the particular conduct is clearly established.'" *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (quoting *Mullenix*, 577 U.S. at 12) (emphasis omitted).

"A 'plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1119 (10th Cir. 2010) (quoting *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1200 (10th Cir. 2009)). "[S]pecificity is especially important in the Fourth Amendment context." *Mullenix*, 577 U.S. at 12.

"Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on

summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted). At the motion to dismiss stage, "it is the defendant's conduct as *alleged in the complaint* that is scrutinized for 'objective legal reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it . . . when conducting the . . . inquiry." *Behrens v. Pelletier*, 516 U.S. 299, 310 (10th Cir. 1996).

## II.    Rule 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In determining whether Plaintiff has stated a plausible claim against Defendant Slater, the Court ignores "labels and conclusions" and a "formulaic recitation of the elements of a

cause of action," neither of which are entitled to a presumption of truth. *Twombly*, 550 U.S. at 555.

Although a pro se party's pleadings must be liberally construed, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## DISCUSSION

### I.    State Law Claims

For Plaintiff's state law claims of defamation per se, intentional infliction of emotional distress, and false light, Defendant Slater argues only that the Court should decline to exercise supplemental jurisdiction over these state law claims once the Court dismisses all of the federal claims. Defendant Slater further argues that the claims against him do not present a substantial federal question because they "are based on conclusory allegations without factual support." [Doc. No. 6, at 4]. However, as discussed herein, Plaintiff's Fourteenth Amendment due process claim survives dismissal, and the Court exercises supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. As Defendant Slater has not presented any other basis to dismiss Plaintiff's state law claims of defamation per se, intentional infliction of emotional distress, and false light, these claims remain.

## II.    Qualified Immunity

### A.    Fourth Amendment Claim

Plaintiff asserts a claim against Defendant Slater pursuant to 42 U.S.C. § 1983 for violating his Fourth Amendment rights "by conducting an unlawful, suspicion-less, and overly broad search and seizure of Plaintiff's private and protected electronic communications and data." [Doc. No. 1, ¶ 51].[1] In his motion to dismiss, Defendant first asserts that he is entitled to qualified immunity. Defendant argues that Plaintiff's own allegations establish that the computer at issue was his "work issued NWTC laptop," and Plaintiff's placing personal data on a public device "does not provide any additional privacy restrictions." [Doc. No. 6, at 7].

In response, Plaintiff claims that qualified immunity is premature and inapplicable, citing to cases which provide that public employees may retain a protected privacy interest in items at work. In "exercis[ing] [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first," the Court first analyzes the clearly established law prong of the qualified immunity analysis. *See Pearson*, 555 U.S. at 236.

Plaintiff relies on *O'Connor v. Ortega*, 480 U.S. 709 (1987) and *City of Ontario v. Quon*, 560 U.S. 746 (2010) for the principle that "public employers may not conduct

---

[1] Plaintiff also concedes in his complaint that two individuals other than Defendant Slater actually carried out the search—Defendant Slater merely authorized the search. [Doc. No. 1, ¶ 15].

blanket or pretextual electronic searches." [Doc. No. 7, at 10].[2] However, Plaintiff's mere reference to these cases is insufficient to show the law was clearly established. Plaintiff merely "identif[ies] in the abstract a clearly established right and allege[s] that the [D]efendant has violated it." *Lundstrom*, 616 F.3d at 1119 (quoting *Swanson*, 577 F.3d at 1200). Notably, Plaintiff provides no explanation as to the relevance of these cases other than the general principle stated above.

In *O'Connor*, the Supreme Court held that a physician at a state hospital retained a reasonable expectation of privacy in the desk and file cabinets in his office because he had been employed there for seventeen years, did not share these items with other employees, and kept other personal materials in his office. *O'Connor*, 480 U.S. at 712-14, 19. In *Quon*, the Supreme Court held that a police department's search of a police sergeant's personal messages on his work-issued pager was not unreasonable under the Fourth Amendment because the search was justified at its inception. *Quon*, 560 U.S. at 750, 761.

Neither of these cases "places the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). In fact, the Supreme Court did not determine whether there was a constitutional violation in either case. Further, neither *O'Connor* nor *Quon* involved an employer's search of an employee's work-issued computer. Although the precedent need not be identical, "specificity is especially important in the Fourth Amendment context." *Mullenix*, 577 U.S. at 12. For

---

[2] Plaintiff also mentions *Riley v. California*, 573 U.S. 373 (2014). The Supreme Court in *Riley* considered the interplay of the search incident to arrest doctrine and modern-day cell phones. *Id.* at 373. At issue here is an employer's search of its employee's work-issued computer. The Court finds this case inapposite.

these reasons, Plaintiff has failed to provide the Court with precedent from the Tenth Circuit or Supreme Court establishing that the law was clearly established at the time of the alleged violation.

Because Plaintiff fails to meet his burden to show that the right was clearly established, he does not overcome Defendant's "presumption of . . . immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). The Court need not determine the constitutional violation prong of the qualified immunity analysis. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.[3]

## B.    Fourteenth Amendment Stigma-Plus Claim

Plaintiff has similarly failed to show that the law was clearly established as to his Fourteenth Amendment stigma-plus claim. "There are two elements of a stigma-plus claim: (1) governmental defamation and (2) an alteration in legal status. . . . When these two elements are present, the government may have 'violate[d] a liberty interest that triggers a procedural due process protection.'" *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011)). "[D]efamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest." *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726 (10th Cir. 2000).

For his stigma-plus claim, Plaintiff alleges that Defendant made false allegations against him regarding "stalking, intentional misconduct, and possession of illegal materials." [Doc. No. 1, ¶ 61]. But, importantly, none of Plaintiff's cited precedent involved

---

[3] Based on this determination, the Court declines to consider Defendant's alternative argument that Plaintiff's Fourth Amendment claim fails under Rule 12(b)(6).

stigma-plus claims. And, although Plaintiff relies on *Hope v. Pelzer*, 536 U.S. 730 (2002), for the proposition that "identical precedent is unnecessary when the unlawfulness is obvious," the Court declines to find that Defendant's conduct was obviously unlawful as to Plaintiff's stigma-plus claim. *See Guttman*, 669 F.3d at 1126 ("[T]his liberty interest is only infringed by defamatory statements if a four-factor test is satisfied: (1) the statements must impugn the employee's good name, reputation, honor, or integrity; (2) the statements must be false; (3) the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and (4) the statements must be published."). Plaintiff has not explained how Defendant's conduct was so obviously unlawful as to not require precedent showing the law was clearly established at the time of the alleged violation. For these reasons, the Court finds that Defendant Slater is entitled to qualified immunity as to Plaintiff's Fourteenth Amendment stigma-plus claim. Based on this determination, the Court again declines to address Defendant Slater's alternative arguments under Rule 12(b)(6).

### C.    Fourteenth Amendment Due Process Claim

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "In the context of public employment, this 'principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his [or her]

11

employment.'" *Nard v. City of Okla. City*, 153 F. App'x 529, 533 (10th Cir. 2005) (quoting *Loudermill*, 470 U.S. at 542).[4]

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "This requirement includes three elements: (1) an impartial tribunal; (2) notice of the charges within a reasonable time before the hearing; and (3) absent emergency circumstances, a pre-determination hearing." *Nard*, 153 F. App'x at 533 (quoting *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983)).

In his complaint, Plaintiff asserts that he received a post-termination hearing rather than a pre-termination hearing, and the hearing was deficient because he "was compelled to respond to vague and anonymous allegations without adequate notice of specific charges, who made them, without the opportunity to confront or cross-examine accusers, without a neutral decision-maker given Defendant Slater's longstanding professional relationships with board members, and without a meaningful opportunity to present a proper defense." [Doc. No. 1, at ¶ 34]. For this claim, Defendant Slater first asserts that he is entitled to qualified immunity.

### i.    Clearly Established Law

Plaintiff contends that *Loudermill*, 470 U.S. 532, "clearly establishes the requirement of pre-termination notice and opportunity to respond." [Doc. No. 7, at 10].

---

[4] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

In *Loudermill*, the Court consolidated two similar cases where school employees were fired without pre-termination hearings. *Loudermill*, 470 U.S. at 535-38. The district courts dismissed their cases under Rule 12(b)(6) for failure to state a claim. *Id.* at 547. The Supreme Court reversed the district courts, finding that "[t]he need for some form of [pre-termination] hearing, recognized in these cases, is evident from a balancing of competing interests at stake." *Id.* at 542.

Here, Plaintiff was employed by NWTC and alleges that he was fired without any form of pre-termination hearing. Rather, he was given a "post-termination hearing [that] was constitutionally deficient." [Doc. No. 1, ¶ 34]. Defendant argues he is entitled to qualified immunity because Plaintiff has failed to show that Defendant's conduct violated a clearly established constitutional or statutory right. [Doc. No. 6, at 24].

For his due process claim, Plaintiff has done "more than identify in the abstract a clearly established right and allege that the [D]efendant has violated it." *Lundstrom*, 616 F.3d at 1119 (quoting *Swanson*, 577 F.3d at 1200). Plaintiff has specifically alleged that he did not receive any form of pre-termination hearing and was not given "copies of any evidence or report on which [Defendants] based his termination." [Doc. No. 1, ¶ 57]. As stated above, courts do not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741 (citation omitted). The Court is satisfied that, in "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to" Plaintiff, he has pled minimally sufficient allegations to show the law was clearly established at the time of the alleged incident. *MacArthur*, 497 F.3d at 1064 (quoting *Twombly*, 550 U.S. at 570).

13

### ii.    Constitutional Violation

The second prong of the qualified immunity analysis requires Plaintiff to establish a constitutional violation. Here, Plaintiff asserts that he was denied a pre-termination hearing in violation of his due process rights, and that the post-termination hearing was deficient. Defendant contends Plaintiff received all the process he was due because Plaintiff admitted he was given a pre-termination hearing before the NWTC Board. However, upon review of Plaintiff's allegations and briefing, the Court finds that Plaintiff has specifically alleged that he was given only a post-termination hearing.

Plaintiff further asserts that he was not given adequate notice of the charges against him, and the post-termination tribunal was not impartial due to "Defendant Slater's longstanding professional relationships with board members." [Doc. No. 1, ¶ 34]. Upon careful consideration, Plaintiff's allegations are minimally sufficient to establish a constitutional violation. *See Nard*, 153 F. App'x at 533 (quoting *Miller*, 705 F.2d at 372) (holding that due process typically requires "(1) an impartial tribunal; (2) notice of the charges within a reasonable time before the hearing; and (3) absent emergency circumstances, a pre-determination hearing").

Accordingly, Plaintiff has met his burden to overcome the presumption of qualified immunity at this stage. The Court next addresses Defendant Slater's argument that Plaintiff's due process claim nevertheless fails under Rule 12(b)(6).

### III.    Rule 12(b)(6)

#### A.    Fourteenth Amendment Due Process Claim

As discussed above, due process in the public employment context is typically satisfied if the discharged employee is given a hearing prior to his or her termination. *See Nard v. City of Okla. City*, 153 F. App'x 529. This generally requires the following: "(1) an impartial tribunal; (2) notice of the charges within a reasonable time before the hearing; and (3) absent emergency circumstances, a pre-determination hearing." *Id.* at 533 (quoting *Miller*, 705 F.2d at 372).

Plaintiff alleges in his complaint that he was denied a pre-termination hearing, and his post-termination hearing was deficient. Defendant contends that Plaintiff's due process claim should be dismissed for failure to state a claim because Plaintiff received the process he was due when he was given a pre-termination hearing. Further, he argues Plaintiff has no due process right to confront anonymous witnesses, Plaintiff cannot show that Defendant was personally involved in any due process violation, and Plaintiff has not sufficiently alleged that the NWTC board was biased.

In accepting the well-pled allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that the complaint contains sufficient facts to state a claim that is plausible on its face. Specifically, it is well established that due process in the public employment context generally requires a pre-termination hearing barring emergency circumstances, and Plaintiff alleges that he was not afforded this right by Defendant. For the same reasons set forth in the Court's qualified immunity analysis, above, the Court

finds that Plaintiff has pled minimally sufficient facts to establish a Fourteenth Amendment due process violation against Defendant.

### B.     Claims Arising Under Federal Statutes

Plaintiff also asserts claims against Defendant Slater for alleged violation of the Stored Communications Act; the Computer Fraud and Abuse Act; and the Wiretap Act. For the following reasons, the Court finds that Plaintiff has failed to state a claim under Rule 12(b)(6) for each claim.

### i.     Stored Communications Act

The Stored Communications Act (SCA) is codified at 18 U.S.C. §§ 2701-2713. Section 2701 provides:

> Except as provided in subsection (c) of this section whoever—(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a).

In his complaint, Plaintiff alleges "Defendants' unauthorized access to Plaintiff's stored electronic communications in his Google account violated the Stored Communications Act, 18 U.S.C. §§ 2701-2712, which prohibits intentional access to stored electronic communications without authorization." [Doc. No. 1, ¶ 42]. Further, he alleges that Defendants disclosed the information to third parties and, as a result, Plaintiff suffered damages in the form of loss of employment, severe emotional distress, and damage to his reputation. *Id.* ¶¶ 66-69.

Defendant asserts that this claim fails because the SCA imposes liability "only on those who personally engage in the act of unauthorized access, interception, or disclosure." [Doc. No. 6, at 17]. Further, Defendant contends that access to Plaintiff's personal Google Chrome account that was open or synced to his work-issued laptop is not a protected "facility" under § 2701. Plaintiff's response hinges on the argument that Mr. Graham changed the password to his Google Chrome account.

Mr. Graham is not a party to this action and Plaintiff has failed to plead any facts specifically tying Defendant Slater to any alleged violation of the SCA. In fact, Plaintiff specifically states that the "search was carried out by NWTC subordinates, specifically Assistant Superintendent Colt Shaw and IT Director Greg Graham." [Doc. No. 1, ¶ 15]. Without more, Plaintiff's conclusory allegations against Defendant Slater do not sufficiently allege a violation of the SCA.

Even viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plead facts sufficient to establish a claim for relief under the SCA against Defendant. Accordingly, Plaintiff's claim under the SCA against Defendant Slater is dismissed without prejudice.

### ii.     Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act (CFAA) "prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *ATS Group, LLC v.*

*Legacy Tank & Indus. Servs. LLC*, 407 F.Supp.3d 1186 (W.D. Okla. 2019) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); 18 U.S.C. § 1030(a)(1)-(7)).

The CFAA is primarily a criminal statute, but "18 U.S.C. § 1030(g) provides that '[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief' but 'only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).'" *Id.* (citing 18 U.S.C. § 1030(g)). These factors include:

> (I) loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value; (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or (VI) damage affecting 10 or more protected computers during any 1-year period.

18 U.S.C. § 1030(g).

Plaintiff alleges that Defendant violated the CFAA by "intentionally access[ing] Plaintiff's computer and private accounts without authorization by changing his passwords and accessing personal electronic accounts." [Doc. No. 1, at ¶ 71]. In his motion to dismiss, Defendant argues that Plaintiff's claim fails for two reasons: (1) Plaintiff fails to plead any facts alleging how Defendant violated the CFAA—his claims center on actions taken by Mr. Graham—and (2) Plaintiff does not allege any damage within the meaning of the statute.

Even construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not pled factual allegations sufficient to support a claim under the CFAA. The Court agrees that, apart from Defendant allegedly authorizing a search of Plaintiff's work-issued laptop, Plaintiff fails to allege facts establishing Defendant's role in any violation of the CFAA. Rather, Plaintiff's claim is premised on Mr. Graham allegedly changing the password to his Google Chrome account while accessing information on his work-issued computer. Further, Plaintiff has not explained how Defendant's conduct fits within any of the factors outlined in Section 1030(g), above. For these reasons, Plaintiff's claim under the CFAA against Defendant Slater is dismissed without prejudice.

### iii.    Wiretap Act

"The Wiretap Act is a criminal statute that provides a private right of action to any 'aggrieved person,' which is defined in relevant part as 'a person who was a party to any intercepted wire, oral, or electronic communication." *Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *7 (N.D. Okla. Sept. 12, 2016) (quoting 18 U.S.C. § 2010). It "criminally punishes any person who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *Id.* (quoting 18 U.S.C. § 2511(1)(a)).

Plaintiff alleges that any electronic communications intercepted in real time or contemporaneously through his personal Google Chrome account were obtained in violation of the Wiretap Act. He asserts that his personal profile was actively synced across multiple personal devices and his work-issued computer, and the information stored on his

personal devices continued to generate and sync data with his work-issued computer in real time during the search. Therefore, he argues that the Wiretap Act was violated when Mr. Graham searched his computer and found the pornographic images at issue.

In his motion to dismiss, Defendant contends that the Wiretap Act is inapplicable for two main reasons: (1) Plaintiff does not allege any facts showing that Defendant intercepted any communications because he did not engage in the search himself and (2) the Wiretap Act prohibits the intentional interception of electronic communications in real time, and accessing synced data in his Google Chrome account does not meet this bar. In response, Plaintiff states that Mr. Graham admitted that he logged into his Google Chrome profile, but Plaintiff fails to address how Defendant was personally involved in any alleged violation of the Wiretap Act.

In "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party," the Court agrees that "the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur*, 497 F.3d at 1064 (quoting *Twombly*, 550 U.S. at 570). Rather than allege facts specifying how Defendant Slater violated the Wiretap Act, Plaintiff focuses on actions taken by Mr. Graham. Namely, Plaintiff's argument hinges on Mr. Graham accessing his Google Chrome account during the search of his work-issued computer.

The Court agrees that Plaintiff has failed to allege any facts that Defendant Slater personally intercepted or otherwise accessed Plaintiff's communications. Accordingly, Plaintiff's claim against Defendant for violation of the Wiretap Act is dismissed without prejudice.

20

**IT IS THEREFORE ORDERED** that Daren Slater's Motion to Dismiss with Brief in Support [Doc. No. 6] is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS SO ORDERED** this 26th  day of March, 2026.

TIMOTHY D. DeGIUSTI
Chief United States District Judge