**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JERAD JACKSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-25-841-D |
| DAREN SLATER, and SAMANTHIA MARSHALL, | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendant Samanthia Marshall's Motion to Dismiss and Brief in Support. [Doc. No. 12]. Plaintiff filed a response [Doc. No. 13], to which Defendant filed a reply. [Doc. No. 14]. The matter is fully briefed and at issue.

**BACKGROUND**

Plaintiff brought this action against Defendants Daren Slater and Samanthia Marshall on July 29, 2025. [Doc. No. 1]. Plaintiff asserts claims against Defendants under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, the Stored Communications Act, the Computer Fraud and Abuse Act, and the Wiretap Act. Additionally, Plaintiff asserts state law claims for defamation per se, intentional infliction of emotional distress, and false light against Defendants. Plaintiff also asserts claims for attorney misconduct and malpractice against Defendant Marshall.

In the instant motion, Defendant Marshall seeks to dismiss Plaintiff's claims brought pursuant to the Fourth and Fourteenth Amendments, along with Plaintiff's state law claims. Defendant argues she is entitled to absolute immunity on Plaintiff's Fourteenth

Amendment and state law claims. Alternatively, she seeks dismissal of the Fourteenth Amendment claims pursuant to FED. R. CIV. P. 12(b)(6). Further, Defendant seeks dismissal of Plaintiff's Fourth Amendment claim and claims for attorney misconduct and malpractice.

**PLAINTIFF'S ALLEGATIONS**

This case arises out of Plaintiff's termination from Northwest Technology Center (NWTC). Plaintiff was employed by NWTC until he was placed on administrative leave by Assistant Superintendent Colt Shaw on September 10, 2024, and allegedly terminated on September 16, 2024. [Doc. No. 1, ¶¶ 8-9]. Before he left, Plaintiff informed Mr. Shaw and another instructor, Bobby Watson, that his work-issued laptop contained personal accounts and indicated that he did not consent to these accounts being searched or accessed by anyone. *Id.* Specifically, he stated his personal Google Chrome account was accessible through his work-issued computer. *Id.* ¶ 9. Plaintiff contends that Mr. Shaw and Mr. Watson told him that no one would be in his office during his absence. *Id.*

On September 13, 2024, Plaintiff was told to return to work the following Monday. *Id.* ¶¶ 11-12, 15. But upon returning, he was confronted with the allegation that pornography was found on his work-issued computer pursuant to a search conducted the day before. *Id.* Plaintiff was told that Defendants Slater and Marshall authorized the search based on allegations of stalking. *Id.* ¶¶ 15, 25. The search was carried out by Mr. Shaw and IT Director Greg Graham. *Id.* ¶¶ 15, 25.

Plaintiff claims that the search of his computer was pretextual and overly broad. *Id.* ¶¶ 15-16. Specifically, he alleges that Mr. Graham admitted under oath that he conducted

a blanket search of his computer. *Id.* Despite Mr. Graham's assertion that he did not search anything personal on the computer, Plaintiff contends that Mr. Graham and Mr. Shaw searched his personal files and online accounts. *Id.* ¶ 16. Further, he alleges that Mr. Graham testified he had to change the password on Plaintiff's accounts to gain access. *Id.* ¶ 17. Plaintiff's main complaint with the search of his computer stems from the search of his Google Chrome account; Mr. Graham testified that he tried to only search for material Plaintiff accessed during work hours, but the account was configured to sync in real-time across multiple personal devices. *Id.* ¶ 20. The pornographic images at issue here were allegedly found in a folder labeled "phone dump." *Id.* ¶ 21.

A hearing was conducted on the matter by the NWTC Board. *Id.* ¶ 22. During Mr. Graham's questioning, he acknowledged that it was possible that the files at issue were accidentally transferred. *Id.* ¶ 23. Plaintiff alleges that Defendant Marshall began reading the titles of YouTube videos from Plaintiff's streaming history at the hearing in an attempt to prejudice the NWTC Board against him. *Id.* ¶ 24.

Plaintiff claims that his hearing was deficient because he "was compelled to respond to vague and anonymous allegations without adequate notice of specific charges, who made them, without the opportunity to confront or cross-examine accusers, without a neutral decision-maker given Defendant Slater's longstanding professional relationships with board members, and without a meaningful opportunity to present a proper defense." *Id.* ¶ 34. Plaintiff further contends that the allegations made against him have caused damage to his reputation. *Id.* ¶¶ 35-38.

## STANDARD OF DECISION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In determining whether Plaintiff has stated a plausible claim against Defendant Slater, the Court ignores "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," neither of which are entitled to a presumption of truth. *Twombly*, 550 U.S. at 555.

Although a pro se party's pleadings must be liberally construed, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## DISCUSSION

### I. Judicial Notice

"The general rule prohibiting courts from considering evidence outside the complaint on a motion to dismiss has [an] exception: 'matters of which a court may take judicial notice.'" *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). "Judicial notice permits a judge to accept 'a matter as proved without requiring the party to offer evidence of it.'" *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (citation omitted). "And taking judicial notice 'preclude[s] a party from introducing contrary evidence and, in effect, direct[s] a verdict against him as to the fact noticed.'" *Fuqua*, 157 F.4th at 1298 (quoting *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002)). *See also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (quotation and citation omitted) ("This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.").

Federal Rule of Evidence 201 states "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Further, "[t]he court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c).

Defendant provides the Court with nine exhibits relating to the underlying NWTC due process hearing. Exhibits one, two, three, six, and nine are letters and proof of mailing

regarding Plaintiff's suspension, notice of his termination hearing, and reasons for his termination. Exhibit four is a letter sent by Plaintiff requesting a special board meeting. Exhibits five, seven, and eight include the minutes and findings of fact from the hearing. Defendant requests that the Court take judicial notice of these exhibits. Plaintiff did not object to Defendant's request. The Court finds that the exhibits are not subject to reasonable dispute, and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Accordingly, the Court takes judicial notice of the public records in Defendant Samanthia Marshall's Motion to Dismiss and Brief in Support. [Doc. No. 12].

## II. State Law Claims

For Plaintiff's state law claims of defamation per se, intentional infliction of emotional distress, and false light, Defendant argues that she is entitled to absolute immunity as to Plaintiff's state law claims and Fourteenth Amendment claims. For reasons explained below, Defendant is entitled to absolute immunity only on Plaintiff's Fourteenth Amendment claims. Therefore, the state law claims survive.

## III. Fourth Amendment Claim

Plaintiff brings a claim under 42 U.S.C. § 1983, alleging violation of the Fourth Amendment. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "In determining whether a Fourth Amendment violation occurred, we first consider whether there was an expectation of privacy in the area searched. If so,

we must determine whether the search was reasonable under the circumstances." *Narotzky v. Natrona Cnty. Mem. Hosp. Bd. of Trs.*, 610 F.3d 558, 567 (10th Cir. 2010) (citing *O'Connor v. Ortega*, 480 U.S. 709, 719 (1987)).

"An expectation of privacy in commercial premises, . . . is different from, and indeed less than, a similar expectation in an individual's home." *United States v. Leary*, 846 F.2d 592, 597 n.6 (10th Cir. 1988) (quotation and citation omitted). "Given the great variety of work environments . . . the question whether an employee has a reasonable expectation of privacy [in his work area] must be addressed on a case-by-case basis." *O'Connor*, 480 U.S. at 718. "Additional factors we consider include: '(1) the employee's relationship to the item seized; (2) whether the item was in the immediate control of the employee when it was seized; and (3) whether the employee took actions to maintain his privacy in the item." *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) (quoting *United States v. Anderson*, 154 F.3d 1225, 1232 (10th Cir. 1998)).

"Under this reasonableness standard, both the inception and scope of the intrusion must be reasonable." *O'Connor*, 480 U.S. at 726. "[I]n applying this reasonableness standard, the courts must balance 'the legitimate privacy interests of public employees in the private objects they bring to the workplace' against 'the realities of the workplace.'" *Narotzky*, 610 F.3d at 568 (quoting *O'Connor*, 480 at 721-22).

In her motion, Defendant argues the search was work-related and reasonable under *O'Connor*. Additionally, she contends Plaintiff fails to allege that Defendant personally directed, conducted, or materially participated in the search.

Plaintiff alleges Defendant violated his Fourth Amendment rights by "authoriz[ing] an overly broad, pretextual search of [his] work-issued laptop." [Doc. No. 1, at 9]. He asserts Assistant Superintendent Colt Shaw and IT Director Greg Graham conducted a search of his work computer after he explicitly denied consent. Further, Plaintiff asserts the pornographic pictures found on Plaintiff's phone were images from his cell phone that linked through his personal Google Chrome account and synced to his work computer. *Id.* at 8, 10.

In response to Defendant's motion, Plaintiff alleges "the stalking and harassment allegations that triggered the investigation were unsupported by evidence and were later abandoned, and that NWTC had no legitimate work-related reason to search his personal digital data." [Doc. No. 13, at 14]. And "the search's scope—accessing personal Google-synced data, including accounts, saved passwords, and browsing history—exceeds anything permissible under a workplace-efficiency rationale and resembles . . . 'general rummaging.'" *Id.*

In "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party," as the Court must at this stage of the case, Plaintiff's Complaint contains minimally sufficient facts to state a claim to relief that is plausible on its face. *MacArthur*, 497 F.3d at 1064 (quoting *Twombly*, 550 U.S. at 570). Defendant cites *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) for the proposition that courts have held there is no reasonable expectation of privacy in work-issued computers. There, the Tenth Circuit held the defendant did not have an objectively reasonable expectation of privacy in his work-issued laptop. *Id.* at 1135. The court, in

analyzing the three factors set forth above, held the employer "explicitly reserved ownership of not only its computer hardware, but also the data stored within." *Id.* at 1134-35. Further, the defendant did not have custody of the pornographic images because he attempted to delete the files. *Id.* Finally, he "did not take actions consistent with maintaining private access to the seized pornography." *Id.*

Here, there are no allegations that NWTC retained ownership of the data stored within Plaintiff's work-issued computer, the photos found on the computer had not been subject of an attempt to delete them, and Plaintiff alleges he did take actions consistent with maintaining private access to the photos by keeping them in his personal Google Chrome account locked by a passcode. The Court finds Plaintiff has pled minimally sufficient facts to establish he retained a privacy interest in data found on his work-issued computer.

Further, although minimal, the Court finds that Plaintiff has alleged sufficient claims to establish the search was not reasonably related in scope to its purpose. Specifically, Plaintiff contends the individuals who carried out the search changed the password to his computer and accessed his personal Google Chrome account—including personal photos stored there. Additionally, the Court finds that Plaintiff's allegations that Defendant authorized the search minimally establish Defendant's personal participation in the alleged Fourth Amendment violation.

Accordingly, Defendant's motion as to Plaintiff's Fourth Amendment claim is **DENIED**.

**IV. Absolute Immunity**

In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court "granted absolute immunity to administrative officials performing functions analogous to those of judges and prosecutors" if the following factors are present: "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1513 (10th Cir. 1987) (citing *Butz*, 438 U.S. 478). "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Olupitan v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, Case No. CIV-24-349-G, 2025 WL 980949, at *3 (W.D. Okla. Apr. 1, 2025) (quoting *Flor v. Bd of Regents of Univ. of N.M.*, 539 F. Supp. 3d 1176, 1186 (D.N.M. 2021)).

"The focus of *Horwitz* is not whether a plaintiff was in fact provided with procedural safeguards required by law; rather, it is whether sufficient procedural safeguards existed in the applicable regulatory framework so that a plaintiff can seek redress through regular channels if they are not complied with." *Devous v. Campbell*, 1994 WL 7111, at *1 (10th Cir. Jan. 13, 1994) (citing *Horwitz*, 822 F.2d at 1514-15) (emphasis omitted).

Defendant claims she is entitled to absolute immunity on Plaintiff's claims brought under the Fourteenth Amendment for violation of Plaintiff's due process rights and a stigma-plus claim. Further, Defendant asserts she is entitled to immunity on Plaintiff's state law claims for defamation, intentional infliction of emotional distress, and false light.

In support, Defendant contends that the superintendent appointed her to serve as the prosecutor for Plaintiff's due process hearing. Therefore, in her role as prosecutor, she is entitled to absolute immunity. Further, Defendant argues that she carries her burden under the *Horwitz* framework because there were sufficient procedural safeguards in the proceedings. Specifically, Defendant alleges "[P]laintiff had the right to be represented by counsel without limitation, the right to present evidence and witnesses, and confront and cross-examine the school administration witnesses." [Doc. No. 14].

Plaintiff argues "[a]bsolute prosecutorial immunity applies solely when a government attorney functions as an advocate in a criminal prosecution." [Doc. No. 13, at 10]. Further, he argues even prosecutors do not receive absolute immunity for investigatory acts.

The Court agrees Defendant is entitled to absolute immunity on Plaintiff's Fourteenth Amendment claims. Defendant was appointed to act as the prosecutor in Plaintiff's hearing and is entitled to immunity for claims arising from her role in such capacity. But the Court finds that Defendant is not afforded absolute immunity for Plaintiff's state law claims because the allegations giving rise to these claims happened, either fully or partially, outside of the hearing setting.

Accordingly, Defendant is entitled to absolute immunity as to Plaintiff's Fourteenth Amendment claims.

## V. Legal Malpractice and Misconduct Claims

### A. Legal Malpractice

Plaintiff must establish the following elements to plead a legal malpractice claim:

> (1) the existence of an attorney-client relationship, (2) breach of a lawyer's duty to the client, (3) facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury or damage, and (5) but for the lawyer's conduct, the client would have succeeded in the action.

*Rhodes v. Bethune*, Case No. CIV-15-120-M, 2016 WL 4031243, at 2 (W.D. Okla. July 26, 2016) (quoting *Manley v. Brown*, 1999 OK 79, ¶ 8, 989 P.2d 448, 452).

Plaintiff asserts a claim for legal malpractice against Defendant. He contends Defendant's conduct fell below the requisite standard of care expected of attorneys.

Defendant argues Plaintiff fails to plead a legal malpractice because there was never an attorney-client relationship between them. In response, Plaintiff argues privity is not required for a claim for attorney negligence and attorneys are not shielded from non-client claims related to bad faith, fraudulent, or malicious acts or conduct. Defendant contends that Plaintiff cannot now change his claim into a negligence claim.

Because there was no attorney-client relationship between Plaintiff and Defendant, the Court finds Plaintiff's claim for legal malpractice fails. To the extent Plaintiff now attempts to bring a negligence claim against Defendant, the Court agrees Plaintiff has not properly pled such a claim.

Accordingly, Defendant's motion as to Plaintiff's attorney misconduct claim is **GRANTED**.

### B. Legal Misconduct

Plaintiff alleges Defendant violated multiple Oklahoma Rules of Professional Conduct (ORPC), including Rules 1.4(a), 4.4(a), 3.3, 4.1, and 8.4(c)-(d), (g). In her motion, Defendant argues Plaintiff cannot bring a misconduct claim against her for alleged violations of the ORPC because "those Rules are not designed to be a basis for civil liability." [Doc. No. 13, at 18]. In response, Plaintiff agrees "ORPC violations are not themselves actionable." *Id.* at 20. Rather, Plaintiff argues the "ORPC often inform the standard of care for attorneys and are admissible as evidence of negligence, bad faith, or improper purpose." *Id.* Therefore, Plaintiff argues, he "does not assert an ORPC-based cause of action; rather, Plaintiff asserts that Defendant Marshall's conduct . . . falls outside any acceptable professional standard and supports liability under Oklahoma tort law." *Id.* at 21.

The Court agrees the ORPC do not provide a private cause of action. *See* Okla. Stat. tit. 5, Ch. 1, App. 3-4, § Scope, ¶ 20 ("Violation of a Rule should not give rise to a cause of action nor should it create presumption that a legal duty has been breached."); *see also Bd. of Cnty. Comm'rs of Harmon Cnty. v. Ass'n of Cnty. Comm'rs of Okla. Self-Insured Grp.*, 2021 OK 15, ¶ 15, 485 P.3d 234, 239 (quoting the same). Further, as explained above, to the extent Plaintiff attempts to bring a claim for negligence, bad faith, fraud, or other Oklahoma state law tort claim not otherwise pled in Plaintiff's Complaint, the Court finds the issue is not properly before it.

Accordingly, Defendant's motion as to Plaintiff's legal misconduct claim is **GRANTED**.

## CONCLUSION

For these reasons, Defendant Samanthia Marshall's Motion to Dismiss and Brief in Support [Doc. No. 12] is **GRANTED in part** and **DENIED in part** as set forth herein. Defendant is granted absolute immunity on Plaintiff's Fourteenth Amendment claims, and those claims are dismissed with prejudice to refiling. Plaintiff's legal malpractice and legal misconduct claims are, likewise, dismissed with prejudice. Plaintiff's Fourth Amendment claim brought pursuant to 42 U.S.C. § 1983 and state law claims survive dismissal at this stage of proceedings.

**IT IS SO ORDERED** this 29th day of September, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE